IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

ANDRES DUARTE,

                Plaintiff,

v.

CLACKAMAS COUNTY SHERIFF'S
OFFICE et al.,

                Defendants.

No. 3:20-cv-00622-MO

OPINION AND ORDER

MOSMAN, J.,

    Before me is Defendants' Motion for Summary Judgment [ECF 22]. The parties agree that the only remaining claim is Plaintiff Andres Duarte's 42 U.S.C. § 1983 against Clackamas County. *See* Defs.' Mot. Summ. J. [ECF 22] at 2; Pl.'s Resp. [ECF 28] at 1. For the following reasons, I GRANT Defendants' motion.

## BACKGROUND

    While in custody at Clackamas County Jail, Mr. Duarte alleges that he was ordered, on five separate occasions, and without proper safety attire, to clean a cell that another inmate had flooded with toilet water and smeared with human feces. Second Am. Compl. [ECF 11] ¶¶ 3–7. He alleges that the contaminated water caused a rash on his forehead, which went away after approximately one week. *Id.* ¶ 11. He argues that Defendant Clackamas County had a policy,

1 – OPINION AND ORDER

practice, or custom of exposing inmates "to fecal matter and other biohazards" in violation of the Eighth Amendment's prohibition of cruel and unusual punishment, and he seeks $30,000 in non-economic damages. *Id.* ¶¶ 12–14.

Mr. Duarte was instructed to clean the cells in his position as an inmate worker, a voluntary position that comes with many privileges. Defs.' Mot. Summ. J. [ECF 22] Ex. 106, at 22–23, 30–32 [hereinafter Duarte Dep.]. Most notably, an inmate worker can receive "work time" credit, which shortens the inmate's sentence. *Id.* at 30–31. An inmate worker also receives other benefits, such as double portions of food, additional TV time, improved lodging accommodations, and the freedom to move outside his cellblock. *Id.* at 31–32. Mr. Duarte was on outside work crew, which allowed him to perform outdoor work at state parks and cemeteries multiple times per week. *Id.* at 32.

For cell-cleaning purposes, Clackamas County provided Mr. Duarte with a 39-inch-long brush and disinfectant cleaner. Defs.' Mot. Summ. J. [ECF 22] Ex. 103; Scott Ciecko Decl. [ECF 23] ¶ 3; Captain Lee Eby Decl. [ECF 24] ¶ 18; Duarte Dep. [ECF 22-6] at 34, 41. He wore long pants, a short-sleeve shirt, latex gloves, and slip-on, low-top shoes. Duarte Dep. [ECF 22-6] at 34–35, 42–43. He was not provided goggles or a biohazard suit, and his request for a long-sleeve shirt was denied. *Id.* at 35, 43. Mr. Duarte alleges that he cleaned feces from a cell under these conditions on five separate occasions. *Id.* at 82.

Mr. Duarte claims that his supervisors threatened to take away his "work time" credit, thereby lengthening his sentence, if he refused to clean the cells. *Id.* at 69. Even so, he refused to clean a cell when instructed to do so for the sixth time. *Id.* at 82. He was not punished, and he continued as an inmate worker until his eventual release. *Id.* at 82–84. In fact, the Clackamas County Jail does not take away "work time" credits, or any other time credits, from inmate

workers who refuse to undertake an assignment. Eby Decl. [ECF 24] ¶¶ 9, 15–16. "If the refusal is unreasonable or is part of a pattern of refusal to work, then the inmate will likely be returned to the general population." *Id.* ¶ 8. Mr. Duarte provides no evidence to the contrary.

Mr. Duarte alleges that the contaminated water caused him to develop a rash on his face, neck, and back. Duarte Dep. [ECF 22-6] at 57. He was prescribed medication for the rash, which caused "a burning sensation," and it went away within a couple weeks. *Id.* at 61, 73. Dr. James E. Leggett, Defendants' expert, opines that the rash was not caused by the contaminated water. Defs.' Mot. Summ. J. [ECF 22] Ex. 101, at 21 [hereinafter Dr. Leggett Report]. Dr. Leggett notes that "Mr. Duarte had a history of opiate usage that leads to skin rash and irritation" that cannot be distinguished from the rash at issue. *Id.* He also notes that despite Mr. Duarte's exposed forearms, no rash developed on his arms. *Id.* A rash did, however, develop on his back and stomach, despite being covered by clothing. *Id.* Dr. Leggett further opines that "coming into contact with fecal matter simply is not that risky." *Id.* at 20. "If any harm results, the most likely consequence is an infection related to enteroviral disease," though "[e]ven in the worst case scenario, this risk is very low." *Id.* "Although full biohazard suits with goggles might even further reduce any potential risk, the risks even without suits and goggles are low and any harm that may result from exposure is likely minimal, if any." *Id.* Other than a rash, "Mr. Duarte "described no other symptoms or illness that would indicate the typical infectious consequences of contact with fecal matter." *Id.* at 21.

Clackamas County admits that Mr. Duarte's supervisors failed to provide him with certain protective equipment. "There is no formal written policy pertaining to inmate workers cleaning feces from cells in the [Clackamas County Jail]." Eby Decl. [ECF 24] ¶ 20. However, "[i]t is common practice in the [jail] to provide inmate workers with the opportunity to wear a

3 – OPINION AND ORDER

full biohazard suit when they are performing work that exposes them to large amounts of feces or other bodily fluids." *Id.* ¶ 21. Before the events that gave rise to this lawsuit occurred, staff at Clackamas County Jail had been instructed to provide biohazard cleaning gear kits to inmate workers tasked with clean-up projects like the ones at issue here. Defs.' Mot. Summ. J. [ECF 22] Ex. 104, at 1, 4–5. Those kits include coveralls, a face shield, and a mask. *Id.* Ex. 104, at 4. Clackamas County states: "It is unknown why [Mr. Duarte] was not provided with access to a biohazard suit on the occasions that he cleaned the cells as the parties have been unable to identify any of the deputies involved in those incidents." *Id.* at 6. Clackamas County Jail sustained Mr. Duarte's grievance, stating:

> After watching video of cleaning the human waste in question I found that it was not consistent in insuring [sic] Inmate workers had the proper protective equipment. It is unknown whether the Inmates were provided full equipment and declined. However, it should be required when cleaning a room encased in human waste. After inspecting the Protective Equipment within the jail, I determined that the equipment could be better labeled, that has been completed. I also determined that . . . more equipment needed to be order that has been completed. The Inmate Work Crew Coordinator will make clean up kits for Inmate workers when the supplies arrive. The Inmate Work Crew Coordinator is also reviewing our training video provided to Inmate workers to make sure our training needs upgraded. I sent a remainder [sic] to staff and supervisors via E-mail that protective equipment needs to be provided to Inmate workers to clean human waste.

*Id.* Ex. 105. Although inmate workers clean feces from cells "several times per year," there is no record of any inmate worker "suffering from any illness or injury as a result of cleaning feces from cells." Eby Decl. [ECF 24] ¶¶ 25, 28.

## STANDARD OF REVIEW

Clackamas County has moved for summary judgment. The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue

4 – OPINION AND ORDER

of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). Where, as here, the nonmoving party will bear the burden of proof at trial, he or she then must "go beyond the pleadings" and present evidence of "a genuine issue for trial." *Id.* at 324. "The non-moving party must show more than the mere existence of a scintilla of evidence" and "must do more than show there is some 'metaphysical doubt' as to the material facts at issue." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"Summary judgment is appropriate only if, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Sierra Med. Servs. All. v. Kent*, 883 F.3d 1216, 1222 (9th Cir. 2018) (quoting *Furnace v. Sullivan*, 705 F.3d 1021, 1026 (9th Cir. 2013)). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Id.* (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict—whether there is evidence upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the *onus* of proof is imposed." *Anderson*, 477 U.S. at 252 (alteration accepted) (internal quotation marks and citation omitted).

## DISCUSSION

Clackamas County moves for summary judgment on three grounds. First, it argues that Mr. Duarte was not compelled to clean the cells. Defs.' Mot. Summ. J. [ECF 22] at 10–13. Second, it argues that Mr. Duarte was not exposed to a substantial risk of serious harm. *Id.* at 13–

16. Third, it argues that Mr. Duarte has not identified any unlawful policy, practice, or custom to support his claim of municipal liability. *Id.* at 17–19. I discuss these three grounds in turn.

I. **Whether Mr. Duarte was Compelled to Clean the Cells**

First, Clackamas County argues that Mr. Duarte, a volunteer inmate worker, was not forced to clean the cells. "[T]he Eighth Amendment is implicated in the prison work context only when a prisoner employee alleges that a prison official *compelled* him to 'perform physical labor which was beyond his strength, endangered his life or health, or caused undue pain.'" *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006) (alterations accepted) (emphasis added) (quoting *Berry v. Bunnell*, 39 F.3d 1056, 1057 (9th Cir. 1994) (per curiam)).

True, Mr. Duarte's position as an inmate worker was voluntary, and he could not be punished for refusing to perform a task assigned to him in that role. Nevertheless, taking the evidence and all reasonable inferences drawn therefrom in the light most favorable to Mr. Duarte, a reasonable jury might find that an officer compelled him to clean the cells. In his deposition, Mr. Duarte testified that every time he was instructed to clean a cell, an officer threatened to take away his "work time" credit if he refused. Duarte Dep. [ECF 22-6] at 69. He further testified that he believed he could be stripped of his time credit or otherwise punished for refusing orders. *Id.* at 49–50. Simply because the officer's threat turned out to be empty does not make it noncoercive. Although I find summary judgment appropriate on Clackamas County's other two grounds, I decline to grant summary judgment on this ground.

II. **Whether Mr. Duarte was Exposed to a Substantial Risk of Serious Harm**

Clackamas County alleges that Mr. Duarte was not exposed to a substantial risk of serious harm. "Not every injury that a prisoner sustains while in prison represents a constitutional violation." *Morgan*, 465 F.3d at 1045. "A prisoner claiming an Eighth Amendment

violation must show (1) that the deprivation he suffered was 'objectively, sufficiently serious;' and (2) that prison officials were deliberately indifferent to his safety in allowing the deprivation to take place." *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828.

On this issue, Clackamas County has satisfied its burden of identifying evidence that it believes demonstrates the absence of a genuine issue of material fact: Dr. Leggett's report. According to Dr. Leggett, "coming into contact with fecal matter simply is not that risky" and "[e]ven in the worst case scenario, this risk is very low." Dr. Leggett Report [ECF 22-1] at 20. Mr. Duarte entirely fails to rebut Dr. Leggett's report or present any evidence of a genuine issue for trial. Instead, Mr. Duarte asserts that Dr. Leggett's report is "entirely irrelevant." Resp. [ECF 28] at 5. In fact, Dr. Leggett's report is highly relevant. If Dr. Leggett is correct, then Mr. Duarte cannot prove that he was exposed to a substantial risk of serious harm, and if he cannot prove that, then he cannot win this lawsuit.

In support of his position, Mr. Duarte relies entirely on an out-of-circuit case, *Fruit v. Norris*, 905 F.2d 1147 (8th Cir. 1990). There, inmates were forced to clean out "a wet-well portion of the prison's raw sewage lift-pump station." *Id.* at 1148. To clean the wet-well portion, the inmates had to stand in six-to-eighteen inches of sewage at the bottom of a well, while prison waste, including sewage from nearly 500 toilets, poured down on them. *Id.* at 1148–49. The temperature inside the well was estimated at 125 degrees. *Id.* at 1149. At trial, the inmates supported their Eighth Amendment claim with testimony from an expert witness. *Id.* at 1149. Their expert "testified that the primary danger to persons working in the wet-well was exposure to toxic or explosive gases that could be formed by decomposing waste, and in comparison, a

7 – OPINION AND ORDER

smaller risk of contracting disease, including hepatitis, from contact with the raw sewage." *Id.* (internal footnote omitted). She further testified that prison officials should be concerned about heatstroke. *Id.* Nevertheless, at the close of the inmates' case-in-chief, the district court dismissed the case because the inmates "did not demonstrate that [the prison officials] had actual or constructive knowledge of the danger of toxic or explosive gases" or of the minimal risk of contracting disease. *Id.* at 1149–50. The Eighth Circuit reversed, holding that the inmates had "presented sufficient evidence of a prima facie violation" to proceed with trial. *Id.* at 1151.

*Fruit* does not help Mr. Duarte. The inmates in that case did what Mr. Duarte has failed to do here: they presented evidence, in the form of expert testimony, to support their claim. Mr. Duarte, on the other hand, has not presented evidence of a genuine issue of material fact to survive summary judgment on this ground. The record before me includes an unrebutted expert report that supports Clackamas County's claim that Mr. Duarte was not exposed to a substantial risk of serious harm. Mr. Duarte may not rely solely on his pleadings to rebut that report.

There is no evidence in the record before me upon which a jury could properly proceed to find a verdict for Mr. Duarte. Accordingly, I grant summary judgment in favor of Clackamas County on this ground.

**III.    Whether Mr. Duarte has Identified an Unlawful Policy, Practice, or Custom**

Clackamas County alleges that Mr. Duarte has failed to establish that the county had a policy, practice, or custom that amounted to deliberate indifference of his constitutional rights. To establish liability against a municipality, "a plaintiff must establish that he was deprived of a constitutional right and that the [municipality] had a policy, practice, or custom which amounted to 'deliberate indifference' to the constitutional right and was the 'moving force' behind the

constitutional violation." *Levine v. City of Alameda*, 525 F.3d 903, 907 (9th Cir. 2008) (quoting *Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996)).

Assuming *arguendo* that Mr. Duarte has established that he was deprived of a constitutional right, I find that he has failed to identify any policy, practice, or custom that was the moving force behind the violation. Clackamas County has provided evidence that the jail's common practice is to provide full biohazard suits to inmates who are instructed to perform work that exposes them to large amounts of feces. Eby Decl. [ECF 24] ¶ 21; Defs.' Mot. Summ. J. [ECF 22] Ex. 104, at 1, 4–5. Additionally, in response to Mr. Duarte's grievance, an officer "sent a remainder [sic] to staff and supervisors via E-mail that protective equipment needs to be provided to Inmate workers to clean human waste." Defs.' Mot. Summ. J. [ECF 22] Ex. 105. Finally, the jail has no record of any inmate suffering harm from exposure to feces while cleaning a cell. Eby Decl. [ECF 24] ¶¶ 25, 28. If the jail had a policy, practice, or custom to require inmates to clean cells without appropriate safety equipment, and if doing so exposes an inmate to a substantial risk of serious harm, then the jail would likely have a record or knowledge of such an injury.

In response, Mr. Duarte relies on two cases. First, he cites *Henry v. County of Shasta*, 132 F.3d 512 (9th Cir. 1997), as proof that "a custom can exist with as little as two separate instances spaced a few weeks apart." Pl.'s Resp. [ECF 28] at 2. Second, he cites *McRorie v. Shimoda*, 795 F.2d 780 (9th Cir. 1986), to support his position that a custom may be inferred if the prison fails to reprimand the official who violated the inmate's rights. *Id.* at 3.

Both *Henry* and *McRorie* are distinguishable from this case. In *Henry*, the Ninth Circuit marched through substantial evidence which suggested that the county may have been acting in accordance with a custom. *See* 132 F.3d at 518–21. It did not merely rely on the fact that two

9 – OPINION AND ORDER

separate instances occurred within a few weeks. Crucial to the court's inquiry was the fact that after Mr. Henry brought his § 1983 action against the county, the county allowed two almost identical incidents to occur a few months later—despite having been put "on notice unequivocally" by Mr. Henry's lawsuit. *Id.* at 518–19. The court reasoned that the county's subsequent actions created a factual issue as to whether the county was acting in accordance with an established policy. *Id.* The court cited *McRorie* for the proposition that a policy or custom may be inferred from a failure to reprimand the prison guards responsible for a constitutional violation or from a failure to admit that the guards conduct was in error. *Id.* at 518 (citing *McRorie*, 795 F.2d at 784). The court held that "post-event evidence is not only admissible for purposes of proving the existence of a municipal defendant's policy or custom, but is highly probative with respect to that inquiry." *Id.* at 519.

Here, Clackamas County's post-event actions were drastically different than the county in *Henry*. The Clackamas County Jail sustained Mr. Duarte's grievance, better labeled the protective equipment, ordered more equipment, reviewed its training video, and reminded staff to provide protective equipment to inmate workers asked to clean human waste. Defs.' Mot. Summ. J. [ECF 22] Ex. 105. The evidence before me, viewed in the light most favorable to Mr. Duarte, reveals a jail that took Mr. Duarte's grievance seriously, admitted that its staff had been in error, and appropriately addressed the underlying issues. There is no evidence that Mr. Duarte or any other inmate was instructed to clean a cell without appropriate equipment after Mr. Duarte filed his grievance. Accordingly, the inferences drawn in cases like *Henry* and *McRorie* cannot be drawn here.

//

//

At bottom, Mr. Duarte does not provide any evidence that Clackamas County acted in accordance with an unlawful policy, practice, or custom. I therefore alternatively grant summary judgment in favor of Clackamas County on this ground.

## CONCLUSION

Mr. Duarte fails to produce evidence that would permit a reasonable jury to return a verdict in his favor. I therefore GRANT Defendants' Motion for Summary Judgment [ECF 22]. This case is DISMISSED with prejudice.

IT IS SO ORDERED.

DATED this 9th day of April, 2021.

MICHAEL W. MOSMAN
United States District Judge